IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN CALLAHAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 20 C 2852 |
| ) | |
| JEFFRY WISDOM and ) | |
| H.E. WISDOM & SONS, INC., ) | |
| ) | |
| Defendants. ) | |

**ORDER DISMISSING AMENDED COMPLAINT**

Kevin Callahan has sued Jeffrey Wisdom and H.E. Wisdom & Sons, Inc. d/b/a Wisdom Adhesives Worldwide (Adhesives), asserting claims for breach of contract, promissory estoppel, unjust enrichment, and quantum meruit. The defendants have moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). The Court has determined that oral argument is not necessary and therefore vacates the hearing set for July 29, 2020.

**Facts**

Callahan alleges the following in his amended complaint. He and Wisdom were friends since childhood. Wisdom owns or owned Adhesives. Callahan was a management consultant. He performed certain services for Wisdom relating to Adhesives in the early 1990s, the early 2000s, and again in 2010.

In 2013, Wisdom asked Callahan to work on developing Adhesives' global business, which at the time was relatively small and not growing. Callahan accepted and was appointed vice chairman and head of Adhesives' global business with

compensation set at $20,000 per month. This was an oral agreement, allegedly due to Wisdom's aversion to written contracts. Callahan worked as an independent contractor, and his compensation was paid to an entity he formed called Playbook Group LLC.

Callahan alleges that he was successful in developing numerous relationships with foreign companies that led to significant growth in Adhesives' global business. After one year, global revenues had more than doubled. Callahan then approached Wisdom and said that he would like to "be paid based on . . . value creation" rather than a fixed salary. Am. Compl. ¶ 31. He says that "Wisdom responded favorably" and told him to "figure out a way to monetize his interest in the global business for purposes of setting his annual compensation." *Id.* ¶ 32. Callahan proposed entering into joint ventures with foreign entities in which Callahan would have a personal stake. He alleges that "Wisdom approved and even encouraged the concept . . . ." *Id.* Callahan says that he proceeded in reliance on Wisdom's assurances, stayed on at Adhesives, and worked to develop the proposed joint ventures. He presented Wisdom with the idea of entering into joint ventures with, initially, entities in Belgium and Taiwan and proposed that the ventures "would include a partial interest for Callahan personally." *Id.* ¶ 35. He says that "Wisdom approved and supported each of these ideas . . . ." *Id.* ¶ 36. Callahan continued to pursue finalizing these and other foreign joint ventures, with Wisdom continuing to approve his efforts.

In November 2015, Wisdom asked Callahan to cut his monthly compensation to $10,000 and, at the same time, "again endorsed Callahan's joint venture structure." *Id.* ¶ 41. Callahan agreed to the pay cut in reliance on Wisdom's promises about getting a stake in global business ventures. He continued to work for Adhesives and pursue the

foreign ventures through 2016, reaching terms with the Taiwanese entity including a 25 percent stake for Callahan. He also continued to pursue the venture with the Belgian entity.

Later, Callahan began to sense that Wisdom had lost interest in carrying through with the foreign joint venture plans. Callahan then proposed to convert his compensation from a salary to a percentage of revenues. He says that Adhesives "encouraged this proposal too, and never rejected it," but he was unable to get the change instituted. *Id.* ¶ 49. In the meantime, Adhesives' global business continued to grow as a result of Callahan's work.

In October 2016, Wisdom told Callahan that he had been in discussions with a competitor of Adhesives to sell the company. Callahan asked about the fate of his proposed joint ventures. He says Wisdom told him to continue to push ahead "and further assured him that, consistent with all prior representations and promises, he would be compensated out of any sale of the Company" and that Callahan would be part of a $20 million anticipated payout to Adhesives employees. *Id.* ¶ 51. Callahan continued to work on global ventures based on these assurances.

In late January 2017, it was announced that Adhesives had been sold to the competitor, H.B. Fuller, for $122 million. Callahan alleges that the global business that he had developed accounted for approximately $5 million of the company's total sales value. He says that he continued to reach out to Wisdom to discuss his request for compensation from the sale of the company, but "Wisdom consistently deflected such inquiries," saying that a significant portion of the sale proceeds had to be held for two years. *Id.* ¶ 57. But even after the two years had passed, Wisdom paid Callahan no

further compensation and disregarded his prior promises and assurances.

In his breach of contract claim (count 1), Callahan says that he had oral agreements with both Wisdom and Adhesives for compensation from the sale of Adhesives, which the defendants breached. His promissory estoppel claim (count 2) is based on essentially the same alleged assurances, upon which he alleges he reasonably relied. Count 3, Callahan's unjust enrichment claim, alleges that the defendants were unjustly enriched by Callahan's work to grow the global business based on promises of increased compensation and that they were unjustly enriched by obtaining compensation in the sale of Adhesives based on the growth of the global business. Finally, in count 4, Callahan's quantum meruit claim, he alleges that the defendants knowingly accepted his services, representing that he would be paid based on the performance of the global business, and that they knew he would rely upon those promises. He alleges that they should be required to compensate him for the fair value of those services.

## Discussion

On a motion for judgment on the pleadings, a court assesses a complaint the same way as it does on a motion to dismiss for failure to state a claim. This requires the court to determine whether the complaint states a claim to relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**1.     Breach of contract claim**

The amended complaint does not allege that the parties reached agreement on a sufficiently definite formula, amount, or other basis for the compensation to which Callahan claims he is entitled. *See, e.g., Haslund v. Simon Prop. Grp., Inc.*, 378 F.3d 653, 655 (7th Cir. 2004). *See also Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 589 (7th Cir. 2012). Without this, Callahan has not alleged an enforceable agreement.

Callahan also has not alleged an adequate basis to impose liability for breach of contract on Wisdom individually. Callahan argues for piercing Adhesives' corporate veil, but his current factual allegations—simply that Wisdom owned 100 percent of the company and stood to benefit directly from Adhesives' sale—are insufficient to state a claim against Wisdom individually on this basis. *See generally Wachovia Secs., LLC v. Banco Panamericano, Inc.*, 674 F.2d 743, 751-52 (7th Cir. 2012). (The Court notes that if Callahan attempts to further amend his complaint, he should clearly identify which party or parties he is suing for breach of contract.)

The Court overrules, however, defendants' argument for "lack of standing." The fact that Callahan alleges that his compensation was paid—likely at his direction—to Playbook Group LLC does not undercut his contention that he was the party who purportedly contracted with Adhesives and Wisdom.

**2.     Other claims**

Callahan's promissory estoppel claim fails to state a claim for the same reason just described. The promise(s) that he has alleged are not "a promise unambiguous in terms," as required to state a claim for promissory estoppel. *Stringer Const. Co. v. Chi.*

5

*Hous. Auth.*, 206 Ill. App. 3d 250, 258, 563 N.E.2d 819, 824 (1990).

The Court overrules, however, defendants' argument that the claims other than the breach of contract claim fail because they may not be asserted when an express contract is alleged. Callahan can appropriately plead in the alternative, though if he amends and again includes a breach of contract claim he should make it clearer that this is what he is doing. Defendants do not attack counts 2, 3, or 4 on any other basis, and it is likely that his allegations are sufficient to, at least, state viable claims against Adhesives for unjust enrichment and quantum meruit.

3. **Dismissal vs. entry of judgment**

None of the deficiencies the Court has identified in the amended complaint is a basis for dismissal with prejudice or entry of judgment. The deficiencies are of the type that can be cured by amendment. Under the circumstances, and seeing as how we are on the second iteration of the complaint at this point, entry of judgment is not appropriate.

**Conclusion**

For the reasons stated above, the Court dismisses the amended complaint, with leave to amend by no later than August 11, 2020. Defendants' motion to strike is terminated as moot. The motion hearing set for July 29, 2020 is vacated. The case is set for a telephonic status hearing on August 18, 2020 at 10:15 a.m., using call-in number 888-684-8852, access code 746-1053. Counsel should wait for the case to be called before announcing themselves.

Date: July 26, 2020

_____
MATTHEW F. KENNELLY
United States District Judge